Good morning. Ryan Moore on behalf of Appellant Vasquez-Salguero. I would like to reserve two minutes for rebuttal. All right. The error in this case was a 16-level enhancement, tripling the guideline sentence for an Arizona burglary conviction that does not require any proof that presence was ever unconsented to. This Court held in 1997 that this same Arizona statute is not a categorical match with generic burglary. Now, Aguila Montes de Oca may clarify the elements of generic burglary, but I would like to clarify our brief as to our argument as to why this Arizona statute can never qualify under Navarro-Lopez as generic burglary. The key here is that Arizona defines the unlawfully or unprivileged element of generic burglary differently than the Federal generic definition. In Arizona, mere intent to commit a crime alone, without more, makes one's presence and entry into or remaining in unlawful for State purposes. And that's it. There's no objective invasion required. There's no evidence required in Arizona that the presence ever became unconsented to. So that's why at the time of the conviction, my client's conviction, shoplifting in Arizona was burglary. Counsel, are you aware of our decision last year, United States v. Terrell, where we applied the modified categorical approach to the Arizona burglary statute? No, Your Honor. I'm aware of Bonat, Reyna Rodriguez, and but not Terrell. Okay. If I'm correct, that we applied the modified categorical approach to the Arizona burglary statute in United States v. Terrell, what does that do to your argument? If my argument as to Navarro-Lopez, that the statute can never qualify, fails, then we still have a statute under Bonat that's been held to be categorically overbroad, and therefore a modified categorical approach is required, which was not done here. There are no judicially noticeable documents in the record. And everybody agrees with that, right? I believe so. Assuming the government doesn't think you waived or something of that nature. But assuming it wasn't waived, everybody agrees. Right. That is, both parties agree. I believe so, and I believe that alone would necessitate a remand in this case, since there was no modified categorical approach conducted. The argument, which I don't believe our argument as to Navarro-Lopez is clear enough in the brief, and I didn't brief the case, but I would like to clarify it at this time. The argument is that the generic definition requires both an unprivileged and unlawful presence and intent to commit a crime, and that those are two separate elements that cannot be conflated and must exist separately. So under the generic Federal definition, intent alone cannot render presence unprivileged. It's irrelevant under the Federal definition. There must be some proof that the presence became unconsented to. And so because Arizona, Arizona intent is all that matters, is all that's required, and Arizona doesn't require any proof that the presence became unconsented to, it's missing altogether Taylor's element of an unlawful or unprivileged presence. That's why under Navarro-Lopez the Court shouldn't even be able to reach the modified categorical analysis. The government argues waiver in this case. There is no evidence that anyone was aware of the controlling law in this case. The controlling law, I think, undisputably was born out at the time, August of 2008. Excuse me.  The only real statement that we have in the record that, well, that concerns the whether or not this prior conviction qualified is in the defendant's sentencing memo where the attorney says this was a burglary, since this was a burglary of a residence, it qualifies as a crime of violence. Can't the district court decide that if, because this argument was not fleshed out before the district court for obvious reasons. So couldn't the district court decide this question in the first instance? The district court in Arizona is more familiar with Arizona law, and you can make your argument there and the district court can make a determination, both whether or not the modified categorical approach can apply, and if it does apply, whether or not it's properly applied in this case. So if we remanded on an open record, couldn't the district court do all of that? Yes. The core of our argument, and I know it's not clear in the brief and I didn't brief the case, but is that the modified categorical approach can never be reached after Navarro v. Lopez for the reasons I stated. But if the court, then yes, the district court would be in a position to. Because if it's not briefed in the brief, it's really difficult for us to rule on it at this point. I'm speaking for myself. It's difficult for me to rule on something that was not fleshed out in the brief. The elements of the argument are in the brief, and the elements of the argument are essentially what is stated in the Snellenberger four-judge dissent, Nealon Smith, Kuczynski, Thomas, and Reinhart. That's really the issue, and then how Arizona applies. And the elements are in the brief, but I recognize that the attorney that briefed the case didn't do it as clearly as could have been done. This case really, with respect to waiver, is Jimenez. Jimenez is 100 percent on point. A reentry case, a 16-level enhancement, and the attorney in Jimenez, just like the attorney here, conceded that the pre-sentence report correctly applied the sentencing guidelines. That's exactly our case. Jimenez held that it is that alone, merely conceding that level of enhancement was not sufficient to show that the attorney knew of the controlling law and gave it up for some reason. That's Perez. That's Jimenez. Additionally, the sentence in this case was substantively unreasonable under what we now know as a mess with Vasquez. The district court didn't have the benefit of that case, of course, because it is an abuse of discretion in this case to use a 19-year-old prior conviction, at which time the defendant was 17 years old, to enhance the reentry sentence by the same magnitude as if that conviction had been more recent. After a mess with Vasquez, this is clearly a very significant mitigating circumstance. There was a below-guideline sentence here, but only by five months, six and a half years came down to six years. And given the defendant's long ties to the community, his presence for a long time, his arguable cultural assimilation. Into the criminal part of the community, some say. Yes. But he nonetheless had been here for 26 years since he was 10 years old, had attended school here, had been a permanent resident, had worked, all of his immediate family was here. And so it's evident from the record that the enhancement based on the staleness of the prior conviction was not properly evaluated in this case, and it's illogical because really we have here the same or a better case than a mess with Vasquez when you get down and look at the similarities between the facts of the case. I see I'm under two minutes. I would reserve at this time the remainder of my time for rebuttal. All right. Thank you. Good morning. Good morning. I'm Mary on behalf of the United States. The defendant claims in the district court that a plain error was committed in the sentencing of this defendant when it sentenced, when it enhanced his sentence by 16 levels for his crime of violence prior conviction of the Arizona burglary statute. The defendant, it's the government's position, waived his claim in the court below and that this waiver by the defendant constituted invited error by the defendant. How did he waive it? Waiver is the relinquishment of a known right. So what is there in the record that reflects that the defendant knew about this argument and intentionally decided to forego that argument? Well, the government thinks that the defendant not only waived the error but invited the error in a couple of ways. Invited error review is pretty much down the drain. We know that. Invited error review, we've said on Bonk, is just an old-time rubric. But what it really is, you ask yourself, did he waive it or did he forfeit it? And he can invite all the error in the world, and the question comes back to was he clever or was he stupid? Well, in this case, the defendant submitted a sentencing memorandum to assist the court. And in that memorandum, he expressly stated, since this was a burglary of a residence, it qualifies as a crime of violence under the applicable sentencing guidelines. But what's the known right? What's the known right that he waived here? The opportunity to challenge the qualification of the conviction as a crime of violence and an opportunity to engage in a Taylor analysis. And while the government will concede that there is not currently contained in the record such an explicit waiver that the defendant said, we have looked at this under Taylor and are opting to not make that argument, waiving that argument. We acknowledge that the waiver here is not as express as that. But what is there that shows that he relinquished this right? Well, his statement that it is a crime of violence and therefore qualifies or triggers a substantial 16-level enhancement is an express, clear statement to the court that they capitulate that issue. The government also argues that by virtue of the eight different objections that were raised to the pre-sentence report, that is a very strong indication that the prior conviction was scrutinized, the entire pre-sentence report was scrutinized, and that defense counsel raised what objections he thought were appropriate. Not only the other. Sotomayor, the attorney knew there was a basis to challenge application of the 16-level enhancement as being a crime of violence. In fact, it looks like nobody in the courtroom was aware of the issue. There is some silence in the record. And so in the face of that, we have to examine what we do have in the record. And it's the government's position that the defendant, by challenging or basically staking his claim on the what effect that prior conviction ought to have on the defendant's sentence in terms of his argument of staleness in the age of the defendant at the time it was convicted, that there was – there is reason in the record to believe that there was due scrutiny applied to that by the defense counsel. That's a double-edged sword, isn't it? I mean, that sounds like here's an attorney who raises every nitty thing he can think of, anything he can possibly conceive of, he raises. So, yeah, that's the kind of guy that he is. So you say, well, therefore, if he didn't raise it, he must have just figured, oh, well, I don't want to raise that one. Or it could be, if he had any clue that that might be a problem, he would sort of have raised it. And the fact that he didn't raise it indicates that he didn't know what he was doing in that respect. He might be brilliant, but it just sort of got below his radar. Why is either one of those arguments more exciting or more – well, I know why you think one's better, but I'm just saying, in the cosmic sense, why is one better than the other? Well, it's the government's position that, on the record, what we appear to have is a defendant who was inviting the district court to put this issue to bed, to accept it as a 16-level enhancement and move on to the other issues he wished to raise. But as a sentencing judge, a sentencing judge would explore that. If the judge was aware at all that there was a possible problem, the judge would have asked the counsel questions about it, explored the issue. It just appears to me on the record that the judge – nobody brought it to the attention of the judge, so the judge didn't explore it. It's hard for me to imagine that the sentencing judge would not – would have let this go by if the judge was aware. And that may be in part due to the facts of the crime that are recounted in paragraph 22 of the pre-sentence report, which would make out a crime of violence if a modified categorical approach were brought to bear on it. Now, the government is not saying that the record presently contains the judicially noticeable documents that would support that, so – and that is why the government asks if the court is inclined to remand to the district court for resentencing on this issue, that it be done on an open record pursuant to Matthews, because paragraph 22 of the pre-sentence report would certainly indicate that there is basis to believe that this was – if the appropriate analysis is brought to it, this crime qualifies as a crime of violence. What's your response to opposing counsel's Navarro-Lopez argument? Well, we do not believe that Navarro-Lopez has the effect of precluding a modified categorical analysis on an Arizona burglary conviction. The counsel, opposing counsel, did file notice with this Court of the related matter that's presently en banc awaiting decision in Aguilamontes, which we believe is – has the potential to affect what the district court does if there is remand for resentencing in this case, because I think that – I think Aguilamontes more directly addresses the case. Okay. But right now, the law is Navarro-Lopez. So – Well, we don't believe that the Arizona burglary statute is missing an element such as is required in the Navarro-Lopez case. The elements of the statute appear to track the – What are the elements of the statute? That there has to be an unlawful or unprivileged entry into a dwelling with an intent to commit a crime therein. And so the Arizona statute tracks that. And it's just that there is another statutory section that allows for the possibility of legal entry and then successively developing the intent to commit the crime therein. And so it's only that secondary analysis that actually winds up precluding the Arizona statute as qualifying as generic conviction for burglary pursuant to Taylor. And so then if you can address the statute under a modified categorical analysis, you may then be able to bring to the sentencing court's attention documents which would then cause the court to be convinced of the actual fact in the instance of that crime, of the crime of violence having been committed, that being that the defendant's intent was to commit the crime therein.  We're trying to make sure that the statute is not unlawfully on the premises. So we don't think Navarro-Lopez precludes the opportunity for the government to prove that in this case. With respect to the issue of the cultural assimilation that the defendant asks for here, the United States would point out that the court was well within its discretion to deny a downward departure on the basis of cultural assimilation. This defendant, as the court made note of at sentencing, had six prior felony convictions. And so we have any ability to review that anyway? I mean, that's a kind of discretionary. That would be correct. We think that there was no abuse of discretion here, and the sentence for the district court was eminently reasonable. I see that I'm out of time, so unless there are other questions from the Court, I will move forward. Either way, it's not. Thank you, counsel. Thank you. Your Plano. I would ask the Court to consider, in this case, the Navarro-Lopez issue, which I believe is contained in the opening brief at page 16 to 17. Intent is all that matters for presence in Arizona. An unconsented presence is not required under Taylor. Intent is completely irrelevant to presence. Okay. Now, tell me, I'm looking at the definition of burglary in the second degree. 13, Arizona Revised Statute, section 13-507, right? Yes. Okay. So what part of that definition, part of that statute are you saying is missing an element? The – and I'm looking at page 13 of the opening brief where – Well, I'm looking at the statute. That's right. I'm asking you what part of the statute is missing an element. The statute uses the term, enter or remaining unlawfully. That term is defined separately in a definition section in the Arizona statute at what's now 13-15012. All right. And this is page 13 of our brief. That term, enter or remaining unlawfully, means an act of a person who enters or remains when such person's intent for so entering or remaining is not licensed. So what Arizona does is it makes whether or not one's presence on the premises is lawful for State purposes turn entirely on what their subjective intent is. And that's not the Federal definition. How have the Arizona courts interpreted the statute? Consistently with this statutory definition of the term that I just explained to you. In the cases cited in the brief and also those cited in the 28-J letter a week ago, the courts have consistently held that intent is all that's required to establish that their presence was unlawful, even in a residence. Okay. We understand your argument. Thank you, counsel. Thank you to both counsels. The case that's argued is submitted for decision by the Court. Thank you.
judges: Wells, Fernandez, Rawlinson